Here to eat, here to eat, here to eat, is Honorable Kenneth Porter of the 2nd Judicial District, who is now back in session to pursue an adjournment. I would like to welcome Mr. Hutchinson to present. Please be seated. Thank you. I present this case in regard to the shooting death, 15-1084, of the Village of East Dundee, Prentiss County, in the Village of Carpentersville, Walmart, of our Homestead Business Trust, Dependents Avenue. I'm going on behalf of the Prentiss County, Mr. Richard C. Policeman. I'm going on behalf of the Dependents Avenue, Walmart, Mr. John A. Simon. I'm going on behalf of the Dependents Avenue, Village of Carpentersville, Mr. Mark T. Paschke. All right, we understand that on the Appalachee side, there's been an agreement to divide time. And we will try to give you information about that time from our timer. So we will proceed, then, with Mr. Gleason to start. May it please the Court, counsel? Well, I really believe this is a very simple appeal for you to decide because it concerns Section 2-1001A2, substitution of judge as a matter of right. And once the Court makes that determination, as I believe it should, to find that the motion was improperly denied, then, according to appellate case law and Supreme Court case law, all subsequent decisions of the trial court are void, ab initio. Are they void or voidable? I know what the old cases say, but now, somewhat in light of the Supreme Court's reanalysis of what is void and what is voidable, what would the remedy be? I believe the decisions that say they are void and of no effect continue. Right, but the trial court had jurisdiction to be wrong in its ruling on the motion for substitution. And so the very recent cases from the Supreme Court in the last year or so have said, well, as long as you had jurisdiction, you can be wrong. It's voidable, or maybe it should just simply be vacated. But jurisdiction is what triggers whether a judgment is void. In other words, no jurisdiction, it's void. Jurisdiction, it's at best voidable. Judge, I would answer by saying that the issue of whether the trial court was right or wrong with respect to this motion for substitution of judge, that itself is not appealable, so the Court goes on to make its other rulings. However, I believe the appellate case law and the Supreme Court case law concerning this section, those cases have said, if the trial court's decision denying the motion was an error, then all subsequent orders are void and are of no effect. Okay. And I don't believe that happened. And so things start all over again then. Is that right? The case would be remanded back to the trial court, and all issues are then presented to the trial court. So presumably a motion to dismiss all over again. Is that correct? Yes. That's correct. And if we did that, if we said that any orders made by the court after this failure to allow substitution as an error of right should be vacated, and it goes back for a new motion, we have an issue that might relate to now judicial economy. Isn't that building, isn't that business almost ready to open? Judge, we've never contended that Wal-Mart can build a store and move across the street if they want it. But the issue about whether it is proper for one municipality to entice a business from its neighboring municipality within a 10-mile limit, in accord with the amendment to the statute, whether that is proper or not, that is not going to go away. And it is an issue that's going to be repeated. But what's your cause of action? What are you looking for from Carpentersville? We are trying to make sure that Carpentersville does not use TIF monies to entice businesses away from East Undine. In this particular case, Wal-Mart. This is a very, very large TIF area. And there is no reason for this court to presume that there will not be other enticements or offers made to other businesses in East Undine, again, within the 10-mile limit, to also move to this new area, again, using TIF benefits. So it doesn't matter to East Undine that the agreement provided that if TIF monies couldn't be used, that other monies would be paid to Wal-Mart? Well, Judge, that is their contention. I disagree that that is what the agreement provided. The ordinance itself passed by Carpentersville on November 18th of 2014, the ordinance itself said nothing about any other manner of providing revenue other than through the TIF Act. The express form of payment from Carpentersville back to Wal-Mart Real Estate Business Trust is entitled TIF note. There is in Wal-Mart's own application statements that they are not asking for any money whatsoever except as available under the TIF Act. And those are contained within its own application that were also a matter of public record, and I can cite them or read them to the court. But for the court to accept that this agreement, if TIF money is decided to be improperly awarded, that it's okay for us to violate the law. We'll go ahead and violate the law, and if we can't, well then, we'll do it some other way. We'll come up with some other legal fashion. But that was not mentioned in the ordinance itself. It wasn't mentioned in Wal-Mart's TIF application. It was not mentioned in any of the S.B. Freedman documents that we did obtain in discovery to the parties. In fact, there's an S.B. Freedman report, I think it's November 14th of 2014, to one of the councils, not for Wal-Mart, but to Carpentersville, saying that without TIF money, the project is not going to go ahead. So there's clearly an issue of fact back at the trial court that needs to be looked at as to whether or not this argument they've made that the harm is going to happen anyway. There's clearly an issue whether that's true, and I don't believe it's proper for the appellate court to start determining factual issues when in their own documents there are contraventions to their allegation now that, well, if TIF money isn't going to be used, we'll do it some other way. Have I answered your end of the question? One last question that I have. If an application is made and called a TIF application and it is granted, must it be granted under the TIF entity, the TIFs, or can it be granted under some other entity? I suppose there could be some agreement somewhere and some ordinance drafted that states the village of Carpentersville is going to turn over $4.3 million of its public tax money at 9% per year. I suppose a municipality could do that, but that's not what they did here. That's not how they advertised it to their own citizens or to anybody else. At least there is an issue based on their own documents that this was only for TIF money, and I don't think this is an issue that's going to go away. Walmart in its own application for TIF mentions that it has done this in numerous localities in Illinois, used applications for TIF money to build new stores. And I don't care if they do that. I mean, that's fine. They're a corporation. They're supposed to maximize their profits. But when the legislature passes an amendment that says you can offer this money, but you can't do it if you're opening up the same store in a new TIF district that's within 10 miles of the town outside your border. And that's what we have here. There's just nothing to indicate this is a problem that's going to go away. What in the statute in the amendment gives East MD standing to contest this? First of all, there is no issue. There are other decisions that already say private citizens within that district, within that taxing body, have the right to bring a suit against the municipality's establishing of a TIF zone. So you're saying because there's an inferred private right of action? I mean, there's no explicit right of action under this statute, is there? Excuse me, Your Honor, but there are appellate cases that have already been decided that establish the right of individuals to bring actions against a municipality over its TIF Act. I mean, those are clear-cut. There are several in the first district. And if Your Honor wants, if you can give me a minute on my reply, I'll be glad to give you the names of those. They're not claiming a citizen within the TIF district or within the actual municipality has no standing. That's never been their claim. Right, but the trial judge didn't rule on private right of action in this manner, did he? The trial judge didn't rule on anything in this case. Nothing. And that's another reason it should be sent back. In granting the motion to dismiss, though, he granted the motion based on lack of standing and did not talk about a private right of action. Isn't that correct? That's right. And he based his decision, Your Honor, on one outdated case that came years, years before the amendment. And if you look at that case, the Carbondale v. City of Marion case, you can't, I believe you can't help but read that decision and see that it pertained to Carbondale saying we may lose a tenant. We may lose a tenant. They couldn't identify the tenant, and that was stated in the Carbondale decision. They were too inexact. They couldn't provide a single name of a tenant who had said they're going to leave. Well, that's not the case here. We have them admitting, yeah, we're going to shut your East Dundee store. Also in Carbondale, they did not have any offer of actual TIF money. Well, that's not the case here either. So you're saying Carbondale is distinguishable from the situation here? Oh, absolutely, Your Honor. It's completely distinguishable. And that's why it doesn't apply. It doesn't apply for those reasons. The store's location was some 60 miles apart. There were no, none of those specific findings. And I would also add there was no statute limiting the right to entice businesses to a new TIF district less than 10 miles away. Now we have a statute that says you can't do that. So you don't even have to find that the legislature, as I believe the trial court wrongfully understood, that the legislature needs to reject Carbondale because it's decided on its own facts. And as to whether there's a palpable injury or not, I mean, even Carbondale admits diminution of real estate taxes if there are concrete identities of the commercial enterprise moving and an actual offer of money. Well, that is a palpable, distinct injury. And it cites the Greer case, which we also did. Turning for a minute to, back to the motion for substitution, what was the meaning of Judge Aikman's order giving you leave to refile? If it didn't mean, giving East on D leave to refile, if it didn't mean that this second complaint was a continuation of the litigation? Well, first of all, Your Honor, I don't really believe that earlier lawsuit is the same case. And if I could indulge, Your Honor, number one, the conduct, the wrongful conduct at issue in this case occurred long after that case was dismissed with prejudice, long after this court rejected their very argument that the earlier case was subject to being refiled. This court said, no, that was a final judgment. And we also have different evidence in this case. We have evidence with respect to Walmart's application, which I've discussed a little bit, only talking about TIF monies. That didn't even, apparently, we didn't find it until there was a FOIA action. We didn't find out about it until the summer of 2014. And that application is supposedly the facts that this decision in November of 2014 was made on. There may be a common statute involved, but that happens in cases all the time, sometimes between the same parties. You can have a, and I tried to allude to this in my reply brief or in my opening brief, but you can have someone claim that driver next door has been driving his car recklessly. I think he's going to damage my tree that my great-grandfather planted, but he hasn't done that. And a court could say, I'm sorry, there's no case here until the damage happens. Well, if that neighbor then goes out, drives recklessly, crashes into the tree, causes it to fall down, that's not the same case. That's a new case. Now an injury's actually happened. And counsel for Carpenter's bill admitted in the trial court, I pointed that out in our briefs, this now is a controversy that is right and justiciable. It's right, justiciable, and real because of actions taken in November of 2014. There is multiple, all of the evidence that we have or would like to present concerns matters submitted and decided in 2014. That's not the same case. And I don't know if I should continue, but with respect to whether the court can consider that issue even, there is no case law, none under 2-1001A2, no case law that has ever held or hinted that a case that is dismissed with prejudice, as this court found in its appellate opinion regarding the 2013 case. That was a final decision. No Illinois case, Supreme Court or appellate, has ever said that a trial judge can consider some other case relating to the parties unless there is affirmative conduct by the plaintiff using 2-1009 to voluntarily dismiss the case, then using 13-217 to refile that case, and then attempt to use 2-1001A2 to get away from that same judge. Because of specific adverse rulings that were made. That just isn't the case here. And I just believe that Judge Aikman did not understand the distinction, and I tried to point that out to him when he said he was going to follow the Bowman decision. Well, the Bowman decision, as we know in the Supreme Court, that exception allowing a trial judge to consider a 2-1001A2 motion, he could consider factors, and the Supreme Court says this, if the case had been voluntarily dismissed and refiled with the exact same allegations, the exact same conduct. We don't have a voluntary dismissal by the plaintiff. No effort by the plaintiffs. It's almost in reverse. They secured a dismissal, as was their right of that earlier case, and are now trying to say even though they were the ones that caused the dismissal, it's the same case, and we shouldn't be able to use 2-1001. Counsel, you'll have an opportunity to respond after we hear argument from the appellants. Thank you. Thank you, Judge. Technically, we're judges. The only justice that I'm aware of is the Chief Justice of the Illinois Supreme Court, but it's a historical thing. And this must be Mr. Simon stepping up.  My name is John Simon, and I represent Walmart Stores, Inc., and Walmart Real Estate Business Trust. And as we've said, I'm going to share my time with counsel for Carpenter's vote, and he's allocated to me nine minutes, and he'll take six minutes. With my time, I'm going to address reasons why we urge the court to affirm the motion to dismiss for lack of standing under 2619 and because of a lack of a private right of action under 2615. Okay. And here's the question that we've asked, and you're going right to the 619 when there is another substantive action or another action pending. Why are you going to 619? Shouldn't we decide the substitution of judge first in order to keep this in some order? And we can address that. I thought that we might address all the issues and everything else. Well, that's fine. But you just said you're going to start with this and maybe go back. Why are you starting? Well, Mr. Counsel for the Carpenter bill is going to address the substitution of judge. Okay. Oh, all right. But I'm prepared to answer a question if you want to hit me with a question. We'll go for it. I would like to begin by pointing out that Walmart operates an intensively competitive economic environment, and its decisions are driven by market forces. Walmart's decision over a decade ago to replace the East Dundee general merchandise store with a super center, including a full-line grocery, was driven by market forces. Walmart's selection of the Carpenterville site for its super center was based on rigorous market analysis. Walmart has had the success it has because it knows its market. Contrary to East Dundee's allegations, Walmart does not seem to controvert any well-plaid factual allegations in the complaint. Rather, pursuant to Section 2619, Walmart raised the affirmative defense of East Dundee's lack of standing. Well, now, if an aggrieved municipality such as East Dundee does not have standing to sue for a violation of this subsection of the Act, 4-3Q13, who does have the right to enforce the statute? And would this statute then be advisory with no teeth? I mean, what's their remedy? Well, the remedy is East Dundee, I don't believe, has a remedy. That's correct, because this doesn't impact East Dundee. They're not a taxpayer, and they're not a taxing body that receives any of the taxes that are going to be reallocated by this Carpenterville decision. So where does it – I know I'm interrupting you, but where is it stated that those two criteria need to be met? Illinois law just recognizes taxpayer standing. It's a separate standing that's recognized by a slew of cases. Taxpayers have standing in Illinois, and so taxpayers can challenge the TIF reallocation. That's a constitutional taxpayer standing issue. The taxpayer from Carpenterville or the taxpayer from East Dundee? No, Carpenterville. No, because the taxpayer standing is based on the fact that the taxpayer may be liable for replenishing the fund that's being allocated allegedly in violation of the law. So it has to be a taxpayer who is liable for replenishing the fund. And East Dundee is not that. Well, what about their lost revenues and the depreciated property values that will result from Walmart opening the store in Carpenterville? Well, Annette, we have cited the Carbondale v. Marion case, the 5th District case, where the court there specifically looked at the City of Carpenter's allegation. And contrary to my Learning Council's representation, the opinion in Carpendale accepts as true, even accepting as true the allegations that they are enticing the retailers in the university malls to go to the Marion City. That fails to state a distinct and palpable injury under the first element of standing. Second, the City of Carpenter case held that the anticipated loss of sales revenue is a result of reduction in sales, which in turn is a result of economic competition. Economic competition is not fairly traceable to the conduct of the defendants. Well, but, I mean, really, in that case, wouldn't the City of Marion's actions in warring, excuse me, away Carbondale's anchor store have had the result of – Carbondale wouldn't have had the competition. Isn't that true? I mean, when you say it's not fairly traceable, if you really look at this, that's what it's from. Do I want to disagree with the decision of Justice Rarick and Carbondale? No, I don't want to disagree with them. I think what he's saying is economic competition is not a distinct and palpable injury, and it's not going to be traceable. That's a 5th District decision. The 2nd District obviously doesn't have to accept that. But that was – we relied on that for the first two elements. And then we relied on a 2nd District decision in Itasca versus Lyo for the third element, which standing in Illinois requires all three elements. And the third element, which is so clear in this case, is that the relief requested must prevent or redress the alleged injury. The relief requested in this case is to void the TIF resolution approving Wal-Mart's TIF application and the redevelopment agreement between Carpentersville and Wal-Mart. That relief does nothing to prevent the closing of the East Dundee store, which as this Court has observed, the Carpentersville store is opening on June 22nd. It's here. But it might discourage other businesses from leaving East Dundee and seeking TIF funds if there was a declaratory judgment that this was improper, correct? That argument is waived. It was not raised in the trial court. We heard it for the first time right here, and it's not addressed in any of the briefs. It's brand new, and we would ask the Court not to consider that at this point. In Itasca, this Court did, as the Court then understands, it did rule that the only result of voiding the economic agreement between the office product supplier in that case and Lyo would be to terminate the sharing of the revenue under the agreement. It would do nothing to address Itasca's loss of tax revenue, and for that reason it affirmed the dismissal of the declaratory judgment action. Let's go back then to this statute. What is the purpose of this 10-mile requirement or 10-mile factor if the legislature isn't trying to accomplish some sort of peacemaking maybe between villages who are involved in this? I mean, what's the purpose of this legislation then at all? Well, first of all, the purpose of the TIF Act is set forth in the beginning of the TIF Act, and it's to promote the redevelopment of blighted areas through the encouragement of private investment. But isn't it not to the detriment of another area to create a second blighted area? Well... Isn't that the point? First of all, there's no suggestion that there's a creation of a blighted area in this case. There's nothing in the record. The allegations of East Dundee are that specifically that the location of the current Walmart are not blighted. It's specifically affirmed in the complaint. So there's no suggestion that we're creating a blighted area in this case under the pleadings. The purpose here, I think, is the legislature is saying in all of the authority that the TIF Act has given Carpentersville, within the municipal boundaries of Carpentersville and East Dundee, within the municipal boundaries of East Dundee, a tremendous amount of authority to reallocate tax revenue, incremental tax revenues. That's what the TIF Act does. And what they're saying, and there's no attempt to change or limit the power of one municipality by investing that power in another municipality, but rather they're saying exercise your power judiciously. If this is not really promoting the economic development, don't do it. Make these findings. So I think my time is up. I'm happy to answer that question or to mention a couple of things on the private right of action if the court is interested, or I'll sit down and let my co-counsel speak to the change of judge. Briefly, how do you respond to counsel's point that there is a private right of action? The private right of action, it depends on the party. Our contention is no private right of action in East Dundee to challenge the factual findings of Carpentersville with respect to a TIF district within the municipal boundaries of Carpentersville. That's the lack of private right of action. We acknowledge that there's a taxpayer private right of action that's completely separate that exists and the courts have recognized, but there's no private right of action for another municipality to change. And in the Carbondale case, they actually changed. It was a factual finding of blight in Marion that they challenged. They said, your factual finding of blight at the location of the Marion Mall is false, and that's what we're going to prove. And Justice Roehrig in that case said, no, you don't have standing to make that challenge of that factual finding, just like in this case. East Dundee has no, and I'm sorry, I switched to standing, but there's no private right of action of East Dundee. Furthermore, the courts have held, and we cited Metzger v. DeRosa to say that the court will only impose a private right of action if it's necessary to effectuate the purposes of the act. And the purposes of the act, Metzger says, is to look at the act as a total and not to focus on just one provision. And East Dundee is focusing just on this one provision, contrary to Metzger v. DeRosa. And there is no need to give effect to the purposes of the TIF Act to create a private right of action. And so we ask the court not to impose such a private right of action and to affirm the dismissal, both on the basis that there's no standing under 2619 and because there's no private right of action for East Dundee under 215. With that, I'll see my podium to counsel for Calperton as well. Thank you. Mr. Passman? Yes. If I could proceed. Good afternoon, Your Honors, and may it please the court. As counsel indicated, I will address the issue of the substitution of judge and ask this court to affirm Judge Ackerman's decision to deny East Dundee's motion for substitution. Under the Bowman decision issued just in December by the Supreme Court, because the cause of action between the parties in this proceeding is the same as in the 2013 proceeding, the two proceedings are all the same case. Therefore, Your Honor, I wanted to hear your question, of course. Therefore, East Dundee does not qualify for substitution as a right. Well, how is this the same right of action, cause of action, in that now we have the application that's been filed in 2014, the decision that was made by Carpentersville to approve the $4.5 million TIF funds, and we have a new party in this action as well. I mean, how is this the same cause of action? Your Honor, both proceedings involve the same transaction. How about how we get to there? The non-suit versus an involuntary dismissal. Isn't that a threshold difference? There is a difference, but I would argue, Your Honor, that under the Bowman case, and I want to answer both these questions, of course, but under the Bowman case, the logic of Bowman is equally applicable here. The voluntary or involuntary dismissal is not a material determination when adjudicating a motion for substitution, where you have the same cause of action with the same parties. If I may, I want to answer both of these questions. I will come to that. I have more I can offer on that. These are the same cause of action because they both arise out of the same transaction, and the central question in both proceedings is the applicability of Section 3Q13 of the TIF Act to the proposed relocation of the Wal-Mart store in East Dundee to Carpentersville. If you compare the complaints, and we don't have the complaint from the first proceeding, but we have this Court's description in its first opinion, both complaints discuss the adoption of the TIF district in 2012, concept plan approval, Wal-Mart's notice in August 2012 that it would be moving, the East Dundee offer of assistance to prevent the move, S.P. Freeman's involvement on behalf of Carpentersville. The only difference are the time-based allegations that reflect the dismissal of the first proceeding for lack of ripeness. It makes sense that the second complaint has additional time-based allegations because that was the problem with the first complaint. We do concede this case is now ripe, but that doesn't get East Dundee past the issue that this is the same case. It's the same cause of action. It's the same dispute. It's the same statute. There is a slight difference in parties. You're correct, Justice Zinoff. However, that was also true in the Bowman case. In Bowman, there was a little bit of a difference in the defendants. I believe that there was a medical office that was sued in the first case but not the second case. They settled out, didn't they? I believe that's correct. I don't recall why. In any event, it was only the doctor. I believe Dr. Otten was the only remaining defendant in the second case. That was not a material determination for the Bowman court. And so we have the same cause of action. And in Bowman, I'll turn now to the question, Justice Jorgensen, if I may. The Bowman court stated that the statute in question, 2-1001A2, Roman at 2, must be read as referring to all proceedings between the parties with respect to the same cause of action. I didn't use the word same. Respect to the cause of action before the court. That is what we have here. It's true that Bowman answered that question with respect to a voluntary dismissal, but that's what the certified question was. As the Bowman court explained, its mission was to answer the certified question. That logic is just as true here. We've got the same cause of action. We've got effectively the same parties. It's Walmart, Carpersville, and East MD. And all that's left is different time-based allegations. But the case is the same. And therefore, we have the same case, and we have Bowman instructing that the right to a substitution of judge does not exist when you've got the same cause of action between the parties. Well, Carpentersville, East MD didn't want to dismiss. They could have made a motion to voluntarily dismiss when it was apparent that certain things may not be right. But they fought it, didn't they? They did fight it. They fought it and lost it. Your Honor, I think it's a good question, but it's important to note that the Supreme Court took intent and motive out of the calculation in Bowman. They expressly declined to rule on the test of waters doctrine, which was the source of the dispute between the 3rd, 4th, and 5th districts. Instead, the Supreme Court gave us, I would say, a simple bright-line rule. Intent doesn't matter and motive doesn't matter. It's simply about cause of action parties. Well, in that case, though, in Bowman, there was refiling based on 13-217. That wasn't done here. And that really was precluded by our decision in the first case, wasn't it? It was precluded in the first case, and that is true. There is not a voluntary dismissal here. There's no refiling under 13-217. So we're to overlook that is what you're saying. I don't think that it matters under Bowman. Bowman gets away from intent, motive, reasoning, and sets this bright-line rule. But there was a certified question in that case that was pretty narrow, wasn't it? The certified question was narrow. The logic employed, however, did not turn on the reason for the dismissal. The Court does not say because it was voluntary, therefore, we read Section 2-1001 as referring to proceedings. The Court says, if it's flatly, Section 2-1001A2, Bowman at 2, must be read as referring to all proceedings between the parties in which the judge took the motions presented, et cetera, with respect to the cause of action. I see my time is up. I'll answer your other questions, of course. It wasn't fair discussion in Bowman that, you know, one of the reasons they were doing this is because the party could not now do and get another judge what they couldn't do as a result of that action before. I mean, that is a motive. I mean, they talked about that even though they may not have specifically decided it that way. I'm not sure I understand. Well, the Bowman party wanted, you know, they dismissed voluntarily and then they came right back and thought that their back was against the wall when they dismissed the first time. By coming right back, they thought that they could now start over. And it's clear that they could not start over because they took the voluntary action for whatever reason. I get that. But for whatever reason, they took the action to dismiss, and now they're not going to get to come back and start all over again. That's correct. I don't know that Bowman conclusively determined that there was any type of gamesmanship by Bowman. But the court did say one of the reasons for its – the court did say one of the reasons is to prevent gamesmanship. But its method of doing so was to avoid getting into those kind of subjective analyses where perhaps I would say they can't, doesn't really know. The court says we're going to set this simple rule here. The question before was about a voluntary dismissal because that is what the certified question was. But the court's method of analyzing that was not dependent on the grounds of dismissal. It was dependent on the fact of the first proceeding and the second proceeding, and that they were the same meant it wasn't the same case. How can these be the same cause of action if the first one did not state a cause of action? The – good question, Your Honor. The claim – I thought so too. Thanks. The claim of cause of action in both is under Section 3Q13. But it's not a cause of action. That's my point. No matter how – where it arises from, the whole point of the first dismissal was this set of allegations is not a cause of action. Under the fact available at the time due to rightness. Whatever. It's not a cause of action. However you want to slice it, if you want to take a position that Bowman says all causes of action must be before the same judge, you have to start with a cause of action. Bowman's case was a cause of action. It had gone through multiple motions. I believe the plaintiff's back was up against a wall with a discovery issue. That's correct. And they go, okay, we want more time. I'll non-sue. They march downstairs and file the case again. Literally within like a week, something like that, two weeks. Very short period of time. The exact same cause of action. No more or less allegations, although you are correct. I think counsel was correct. There was only one remaining defendant in the second case. But there was a cause of action here and there was a cause of action here. The whole reason that the dismissal was granted the first time was there was not a cause of action. It was not yet right. There was pieces missing. Were pieces missing? Excuse me. So how do we get around that? Your Honor, you suggested that the case must necessarily go back to the same judge. No, it doesn't have to. It happened in this matter that the second proceeding was assigned to the same judge. So there's not a necessity of that. But beyond that, we have the record of the first proceeding where Judge Ackman acknowledged, recognized, as the court noted in its discussion with counsel Reese Dundee, that he was granted leave to refile. This court, in its decision, acknowledged that it was not a prejudicial dismissal by Judge Ackman. This court distinguished it being a final judgment for purposes of appeal and a dismissal with prejudice. The notion in the first case was that case would come back. There was a time frame where that case would come back when there was a more developed factual record. That is all that this is. Everything else about this is the same. And I would suggest, as Bowman alludes to the River Park case, which used the transactional test to determine that it's all one case, so too is it with this set of facts. We have one case. The first proceeding was dismissed because it was not ripe. It is now ripe, but everything else about it is the same but for the passage of time. And for those reasons, East India does not qualify for a substitution of judges of right, and we ask that this court affirm Judge Ackman's denial of that motion. Thank you, counsel. Thank you very much. Mr. Gleeson. Your Honor, no matter how defense counsel try and structure or argue about the Supreme Court's decision in Bowman, the language is clear that the reason they allowed a trial judge to consider whether the petition was timely filed was because that plaintiff had voluntarily dismissed his case and then refiled the same case. And by the same case, it's not just citing the same statutes. It's citing the exact same acts of negligence by the ‑‑ purported acts of negligence by the physician. It just doesn't fit in this case. I think it's paragraph 7 of our complaint says the complaint's based on actions taken by Carpentersville and Walmart in 2014. Well, none of those actions had happened when the earlier case was held by the trial court and by this court. The case doesn't exist. And the evidence in the case in the Bowman matter, that was going to be the same to any jury that heard it under any number. It was going to be the same evidence. Was the doctor guilty of malpractice on a certain day? You can have disputes between the same parties. You can have them over similar activity, an auto accident, damage to property. You can have them cite similar statutes, violations of the vehicle code or some other matter. But if they occur on different dates, no one would call that the same case. And that's what we have here. Our complaint talks about different conduct. You just cannot read, I don't believe, should be read the Bowman case or any of these cases that they cite to allow a defendant to, in effect, penalize a plaintiff who did not try and use voluntary dismissal, did not try and refile the same cause of action. Your honors had asked me about the orders, whether they're void or voidable. And I do, did cite in the brief, I believe, the Krikos case out of the first district in 2015. And that case at paragraph 29 did say all orders filed after Judge Vega denied Diana's motion for substitution are void. We do not reach the remaining issues on appeal. They're based on a void order. And then they cite N. Ray Dominique, 2045, Illinois 2nd, at 324. I understand that the Dominique case was settled some years ago. But whether they're void or voidable doesn't change the analysis with respect to this case. Because if this court decides that the motion for substitution was wrongfully denied, then all issues must be sent back to the trial court. And the new trial court can then look at these issues. So whether your position is we could vacate. If we find that the motion for substitution was not ruled properly, the remedy is to vacate it, whether it's void or voidable. Yes, Judge. OK. Based on all of the case laws, Supreme Court and appellate, and send it back. I don't know if the court wants me to address this issue of a private right of action. But if East Indy doesn't have a private right of action under the statute, who would? Under the amendment, who possibly would? Well, but private right of action usually talks about a taxpayer. You're a tax collector. You're not a taxpayer. I tried to figure out how East Indy could be a taxpayer, and I suppose there might be some theory, but I don't think it's been alleged here. But the injury, we have alleged a distinct and palpable injury of loss of real estate, taxes through diminution of property values. Those have been recognized by appellate case law. But you can't get any of those things from this particular litigation. Carpentersville isn't going to – I mean, I can't envision a situation where Carpentersville is going to pay you anything in a case like this. But the issue is going to remain for us, Judge, with this. OK. So it's on that basis that you're trying to prevent further exodus or something of that nature, not any money specifically from this departure. Well, they haven't opened yet. I know they plan on opening soon, but they haven't opened yet. OK. Well, we've – this Court has said, and it's been affirmed by the Supreme Court, that some bleachers need to be torn down. But I don't think this Court has ever said a brand-new building needs to be torn down. I'm not saying it needs to be torn down. OK. Sell it to Costco. Just kidding. No, they don't want to get any more. So, Your Honor, for all of the reasons I have stated already and for the reasons in our brief, unless the Court has additional questions. Mr. Ferguson. I don't. Thank you very much. Counsel, thank you for your arguments. We will take the matter under advisement. We are going to stand in recess now until approximately 1 o'clock, and we will return at that time for our next series of arguments. Thank you. Thank you.